# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| JULIE ANN M., | Case No.  1:20-CV-00510-REP |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security[1], | |
| Defendant. | |

Pending is Petitioner Julie Ann M.'s Petition for Review (Dkt. 1) and an accompanying Brief in Support of Petition to Review (Dkt. 17) appealing the Social Security Administration's final decision finding her not disabled and denying her claim for disability insurance benefits. *See* Pet. for Rev. (Dkt. 1).  This action is brought pursuant to 42 U.S.C. § 405(g).  Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## ADMINISTRATIVE PROCEEDINGS

Petitioner is a woman in her mid-thirties who alleges that she is unable to work due to a constellation of physical and mental problems, including anxiety, post-traumatic stress disorder ("PTSD"), schizoaffective disorder, bipolar disorder, fibromyalgia, migraines, and psoriatic arthritis.  AR[2] 18, 274.  Petitioner has applied for disability benefits on six occasions.  AR 56.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi will be substituted as the respondent in this suit.  Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g).

[2] Citations to "AR __" refer to the cited page of the Administrative Record (Dkt. 16).

**MEMORANDUM DECISION AND ORDER - 1**

Petitioner's first five applications, dated 2003, 2007, 2008, 2014, and 2015, were all denied without Petitioner exhausting her appeals.  AR 56, 110, 119.  Petitioner received the fifth denial in the form of an ALJ decision dated March 30, 2018.  AR 119.

On June 25, 2018, Petitioner filed the application for supplemental security income ("SSI") that forms the basis of this appeal.  AR 15.  In this application, Petitioner initially alleged a disability onset date of March 31, 2018, one day after the last ALJ's denial.  AR 15, 119, 275.  Petitioner later amended this onset date to September 27, 2018, the date she was diagnosed with psoriatic arthritis.  AR 15, 88.

As with her previous claims, Petitioner's current claim was denied initially and on reconsideration.  AR 15.  Petitioner requested a hearing in front of an Administrative Law Judge ("ALJ").  *Id.*  On March 10, 2020, the claim went to a hearing before Administrative Law Judge ("ALJ") Wynne O'Brien-Persons.  *Id.*  On April 10, 2020, the ALJ issued a decision that was unfavorable to Petitioner.  AR 12-32.

Petitioner appealed this decision to the Appeals Council.  The Council denied Petitioner's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security.  AR 1-6.

Having exhausted her administrative remedies, Petitioner filed this case.  Petitioner raises four points of error, all related to the ALJ's assessment of her mental health functioning.  First, Petitioner contends that the ALJ erred in determining that her mental health conditions did not qualify as presumptively disabling under any of the mental health listings.  Pt.'s Br. at 5-11 (Dkt. 17).  Second, Petitioner maintains that the ALJ did not provide legitimate reasons for rejecting the opinions of two medical professionals: Dr. Richard T. Sonnenberg and Nurse Practitioner

---

**MEMORANDUM DECISION AND ORDER - 2**

("NP") John Frank.  *Id.* at 11-16.  Third, Petitioner argues that the ALJ failed to provide clear and convincing reasons for discrediting her subjective symptom testimony.  *Id.* at 16-19.  Fourth, Petitioner maintains that the ALJ improperly rebuffed the statement of her mother.  *Id.* at 19-20.  Petitioner raises no challenges to the ALJ's assessment of her physical impairments.

## STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards.  42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017).  Findings as to any question of fact, if supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g).  In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).  The standard requires more than a scintilla but less than a preponderance.  *Trevizo*, 871 F.3d at 674.  It "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the Court is to review the record as a whole to decide whether it contains evidence that would allow a person of a reasonable mind to accept the conclusions of the ALJ.  *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051.  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Treichler*, 775 F.3d at 1098.  Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig*, 681 F.3d at 1051.  In such

**MEMORANDUM DECISION AND ORDER - 3**

cases, the reviewing court may not substitute its judgment or interpretation of the record for that

of the ALJ. *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The decision must be based on proper legal standards and will be reversed for legal error.

*Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098. Considerable

weight is given to the ALJ's construction of the Social Security Act. *See Vernoff v. Astrue*, 568

F.3d 1102, 1105 (9th Cir. 2009). However, this Court "will not rubber-stamp an administrative

decision that is inconsistent with the statutory mandate or that frustrates the congressional

purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## THE SEQUENTIAL PROCESS

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a

sequential process in determining whether a person is disabled in general (20 C.F.R. §§

404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the

meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in

substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is

work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial

work activity" is work activity that involves doing significant physical or mental activities. 20

C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay

or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the

claimant is engaged in SGA, disability benefits are denied regardless of his or her medical

condition, age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the

claimant is not engaged in SGA, the analysis proceeds to the second step.

**MEMORANDUM DECISION AND ORDER - 4**

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" if it does not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522, 416.922. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal a listed impairment, the claim cannot be resolved at step three and the evaluation proceeds to step four. 20 C.F.R. §§ 404.1520(e), 416.920(e).

In the fourth step of the evaluation process, the ALJ decides whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. An individual's past relevant work is work she performed within the last 15 years, or 15 years prior to the date that disability must be

established, if the work was substantial gainful activity and lasted long enough for the claimant to learn to do the job.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin,* 759 F.3d 995, 1011 (9th Cir. 2014).  If the claimant can do such other work, he is not disabled; if the claimant cannot do other work and meets the duration requirement, he is disabled.

## THE ALJ'S FINDINGS

The ALJ found that Petitioner suffers from the following severe impairments: psoriatic arthritis, seborrheic dermatitis, migraine headaches, obesity, schizoaffective disorder, bipolar disorder, generalized anxiety disorder, borderline personality disorder, and PTSD.  AR 18.  The ALJ determined that these impairments affected Petitioner's ability to engage in work-related activities in a variety of manners, including that Petitioner "is limited to simple, routine tasks with only occasional changes in the work setting" and "only occasional public and co-worker interaction that is brief and superficial."  AR 24.  The ALJ also determined that Petitioner's impairments would cause her to be off-task five percent of the workday.  *Id.*  Despite these limitations, the ALJ found that Petitioner could perform a range of light work, including working as a cleaner, a routing clerk, and a marker.  AR 24, 31-32.  The ALJ, therefore, found that Petitioner was not disabled.  AR 32.

**MEMORANDUM DECISION AND ORDER - 6**

**DISCUSSION**

I.    <u>The ALJ's Step Three Analysis</u>

Petitioner's first challenge on appeal is that the ALJ should have found her mental health conditions disabling under Listings 12.03, 12.04, 12.06. 12.08, and 12.15.  Pt.'s Br. at 5-6 (Dkt. 17).  These are the Listings for schizophrenia and other psychotic disorders, bipolar disorders, anxiety disorders, personality disorders, and trauma and stressor-related disorders.  20 C.F.R., Pt. 404, Appendix 1 of Supt. P.

Like all mental health listings, these listings require the satisfaction of two criteria. First, a claimant must provide medical documentation of the paragraph A criteria, which show that the claimant suffers from the specific mental disorder at issue.  *Id.* at 12.00(A)(2).  Second, the claimant must prove that they met the requirements of either paragraph B or C, which measure the severity of the functional limitations associated with a claimant's mental health disorders.  *Id.*

The issue in this case is whether the ALJ correctly determined that Petitioner did not satisfy the paragraph B criteria.[3]  Pt.'s Br. at 6 (Dkt. 17).  To satisfy the paragraph B criteria, a claimant must show extreme limitation of one or a marked limitation of two of four broad domains, which are the same for all mental health listings.  20 C.F.R., Pt. 404, Appendix 1 of Supt. P, 12.00(F)(2).  The domains are:

1.   Understanding, remembering, or applying information;

2.   Interacting with others;

3.   Concentrating, persisting, or maintaining pace; and

---

[3] Several of the relevant listings have paragraph C criteria.  *See*, *e.g.*, Listings 12.03, 12.04, 12.06, and 12.15; *see also* AR 23-24.   Petitioner, however, has elected not to challenge the ALJ's decision that Petitioner does not meet these criteria.  Pt.'s Br. at 6 (Dkt. 17).

    4.   Adapting or managing oneself.

*Id.* at 12:00(E); *see also* Listings 12.03(B), 12.04(B), 12.06(B). 12.08(B), and 12.15(B).

The paragraph B criteria, like the requirements for all listings, are "purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'" *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)). In essence, "[t]he listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" *Zebley*, 493 U.S. at 532 (emphasis in original; citations omitted).[4]

It is the claimant's burden to make this showing. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). In other words, it is Petitioner's burden to show that her functional limitations in the paragraph B domains are sufficiently grave. *Id.*

The ALJ found that Petitioner had not met this burden. Specifically, the ALJ found that while Petitioner had several, severe mental health conditions, these conditions only caused (i) *moderate* limitations in understanding, remembering, or applying information, (ii) *moderate* limitations interacting with others, (iii) *moderate* limitations with concentration, persistence, or

---

[4] While Petitioner's opening brief correctly recognizes her Step Three burden, the arguments Petitioner makes in her reply brief inaccurately water this burden down. *See* Pt.'s Rply at 3 (Dkt. 22) (arguing that the ALJ erred at Step Three because the "record as a whole" does not support the finding that Petitioner's impairments are not severe); *see also id*. at 5 (arguing that the Court should reverse the ALJ's Listing analysis because Petitioner's periods of mental stability do not show "that her mental health conditions had improved to the extent that she could function in the workplace"). These arguments conflate the standards at Step Two, Three, and Four of the sequential analysis. At Step Three, the question is not whether a claimant's impairments are severe (this question has already been answered in the affirmative) or whether these impairments prevent that particular claimant from engaging in full-time work. 20 C.F.R. § 416.920(a)(4). The question is whether the claimant has shown that her conditions meet the stringent criteria for presumptive disability. *Zebley*, 493 U.S. at 532. The reasonableness of the ALJ's findings must be measured according to this standard.

**MEMORANDUM DECISION AND ORDER - 8**

pace, and (iv) *moderate* limitations adapting or managing oneself.  AR 22-23.  In other words, Petitioner's anxiety, PTSD, bipolar disorder, personality disorder, and schizoaffective disorder did not satisfy the paragraph B criteria for presumptive disability.  *Id.*

Petitioner takes issue with two of the ALJ's findings.  First, Petitioner contends that she is markedly limited in her interactions with others.  Pt.'s Br. at 7 (Dkt. 17).  Even if Petitioner is correct about this sub-challenge, that alone does not entitle her to relief.  As outlined above, to qualify as presumptively disabling, Petitioner's mental health conditions must cause extreme limitations in one or marked limitations in *two* of the paragraph B domains.  20 C.F.R., Pt. 404, Appendix 1 of Supt. P, 12.00(F)(2).  Here, the only other paragraph B domain in which Petitioner claims she was more than moderately limited is the fourth domain.

Specifically, Petitioner insists she is markedly, if not extremely, limited in adapting or managing herself.  Pt.'s Br. at 10 (Dkt. 17).  Petitioner, however, has not and cannot show that the ALJ's findings to the contrary are unreasonable.

Adapting or managing oneself "refers to the [ability] to regulate emotions, control behavior, and maintain well-being in a work setting."  20 C.F.R., Pt. 404, Appendix 1 of Supt. P, 12.00(E)(4).  Examples of appropriately adapting or managing oneself include "responding to demands; adapting to changes; managing [one's] psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans . . . independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions."  *Id.*  To show that she was markedly limited in this domain, it was Petitioner's burden to show that her ability to function "independently, appropriately, effectively" in this area on a sustained basis was "seriously limited."  *Id.* at 12.00(F)(2)(d).

**MEMORANDUM DECISION AND ORDER - 9**

The ALJ identified a range of evidence showing that Petitioner was not limited in this manner. First, the ALJ noted that Petitioner's medical records shows that she "experienced significant improvement in symptomatology with appropriate treatment." AR 23. The records the ALJ cited to support this finding indicate that Petitioner's doctors regularly found her to be "well-groomed" and dressed appropriately, with "good hygiene." AR 795, 807, 923; *see also* AR 1339. In addition, when seeking treatment for her various physical ailments, Petitioner was able to make "good eye contact" with medical providers, have appropriate facial expressions, be "pleasant and cooperative" and present as having normal mood, normal judgment, normal thought content, and generally normal cognitive functioning. AR 807, 829, 1535; *see also* AR 821, 835, 839, 843, 1535, 1597. Notably, even when she showed signs of being depressed or having labile or irritable moods at counseling visits, she was still described as having an "appropriate and cooperative" manner, well-organized thought processes, good eye contact, intact judgment, and articulate or normal speech. AR 923; *see also* 726, 729, 732, 919, 1339-1340. In one of the medical records highlighted by the ALJ, Petitioner expressly reported to her counselor that she was "balancing out" after resuming her medication. AR 922.[5]

These records show that despite her mental health struggles Petitioner has been able to appropriately care for and dress herself, make and attend medical appointments, and act appropriately at these appointments. The ALJ reasonably concluded that these abilities were indictive of fair functioning in Petitioner's ability to adapt or manage herself.

---

[5] Petitioner complains that the ALJ only cited four examples to support these points. Pt.'s Br. at 9 (Dkt. 17). A review of the record, however, does not reveal that the citations the ALJ picked were isolated instances, unrepresentative of Petitioner's general appearance, behavior, and mental presentation at her medical appointments. AR 1339, 821, 835, 839, 843, 1535, 1597, 726, 729, 732, 919, 1339-1340.

**MEMORANDUM DECISION AND ORDER - 10**

The ALJ relied on Petitioner's daily activities to bolster this conclusion.   AR 23.   The ALJ stressed that Petitioner "is able to engage in appropriate hygiene and grooming, take care of her four minor children, and take care of pets."   *Id.*   Petitioner does not contest that this is true or address this portion of the ALJ's reasoning at all.   *See generally* Pt.'s Br. at 10-11 (Dkt. 17). This is fatal to her claim.   Petitioner's ability to take care of herself and her children over the course of many years was a rational reason for the ALJ to conclude that Petitioner was not markedly limited in her ability to adapt and manage herself.   *See Desiree B. C. v. Kijakazi*, Case No. 20-cv-6942, 2022 U.S. Dist. LEXIS 35803, *14 (C.D. Cal. February 28, 2022) (the record supported the ALJ's conclusion that the claimant was only moderately limited in her ability to adapt and manage herself where "[a]lthough she lost custody of her first child, [the claimant] managed to take care of two sons, one of whom has ADHD, while pregnant with another child") and *Catalina A. v. Saul*, Case No. 4:20-cv-5124-EFS, 2021 U.S. Dist. LEXIS 89076, *14 (E.D. Wash. May 10, 2021) (the ALJ rationally found that the claimant was only moderately limited in her ability to adapt or manage herself where she "was able to care for her children, prepare meals, handle financial affairs, drive herself and family members, and use public transportation").

Petitioner's arguments to the contrary amount to a request for the Court to reweigh the evidence regarding the severity and intrusiveness of her mental health symptoms and elevate Petitioner's preferred reading of the record over the ALJ's reasoned decision.   The Court declines this request.

Contrary to Petitioner's position, none of the evidence she cites *proves* the ALJ was wrong or shows that the only reasonable conclusion the ALJ could have reached is that Petitioner

**MEMORANDUM DECISION AND ORDER - 11**

is so limited in her ability to adapt or manage herself as to be presumptively disabled.[6]  First,

Petitioner emphasizes (i) that she has long reported auditory hallucinations in which she hears

voices and (ii) that she has also told doctors she engages in unprotected sex with strangers when

she is manic.  Pt.'s Br. at 10 (Dkt. 17).  The evidence of Petitioner engaging in risky sexual

behavior, however, predates Petitioner's disability onset date.  *Id.*  It is not clear how often, if at

all, Petitioner engaged in such behavior during the period under consideration.[7]  In any event,

Petitioner's history of risky sexual behavior and ongoing auditory hallucinations are only two

data points regarding her judgment and functioning.  They do not negate the ALJ's findings that,

despite having serious mental health issues, Petitioner was able to successfully care for and

groom herself, care for her children, display normal judgment around medical appointments and

decisions, and, when in treatment, manage her psychological symptoms.  In other words, while

they could have supported the ALJ in reaching a different conclusion, they did not compel the

---

[6] The Court recognizes that NP John Frank issued a report finding Petitioner markedly limited in her ability to adapt or manage herself.  AR 1343.  The ALJ, however, specifically rejected this report as unsupported and unpersuasive.  AR 30.  Petitioner has raised a separate challenge to this portion of the ALJ's decision, which the Court addresses in more detail below.  *See infra* Section II.c.  Because the Court finds that the ALJ provided reasonable and legitimate reasons for discrediting NP Frank, the Court will not consider these opinions as a basis for rejecting the ALJ's Step Three findings.

[7] In March 2018, for example, Petitioner reported that her last manic period was "about a year ago."  AR 489.  Similarly, in January 2020, when Petitioner resumed mental health treatment after almost a year without care, Petitioner told an evaluator that she had been doing "okay" up until 2019 when she stopped services.  AR 1333.  Petitioner also reported that the duration, severity, and nature of her manic episodes had lessened as she aged.  *Id.*; *see also* AR 1336 (as part of an initial evaluation where she described her psychiatric history, Petitioner explained that she "has had risky sex with strangers," but also "stated that instead of wanting a lot of sex [or] over spending she will now focus on cleaning" when she is manic).

**MEMORANDUM DECISION AND ORDER - 12**

ALJ to find Petitioner was markedly rather than only moderately limited in her ability to adapt and manage herself.

Second, Petitioner underscores that she told Dr. Sonnenberg that she is too paranoid and fearful to participate in the "social setting that is work." Pt.'s Br. at 10 (Dkt. 17). But these subjective reports, which the ALJ separately discredited, speak more to Petitioner's ability to interact with or work around others than they do to her ability to adapt or manage herself. They do not show that she was seriously limited in her ability to recognize hazards, take care of herself, make plans, set realistic goals, or otherwise manage herself in less social settings.

In short, the evidence that Petitioner was overwhelmingly cooperative with providers, maintained good hygiene on her own, showed mostly normal insight and judgment, and was able to care for her minor children constituted substantial evidence that Petitioner was not markedly limited in her ability to adapt or manage herself. *See Catherine J.S.W. v. Comm'r of Soc. Sec.*, Case No. 3:20-CV-05602-TLF, 2021 WL 5276522, at *4 (W.D. Wash. Nov. 12, 2021). The ALJ's Step Three findings, therefore stand.

II.   <u>The Medical Opinion Evidence</u>

Petitioner's second challenge on appeal is to the ALJ's assessment of the medical opinion evidence.

a.   *The Standard for Reviewing the Medical Opinion Evidence*

On January 18, 2017, the Social Security Administration published comprehensive revisions to its regulations governing the evaluation of medical evidence. *See* 82 Fed. Reg. 5844. These amendments apply to claims, such as Petitioner's, that are filed on or after March 27, 2017. *See* 20 C.F.R. § 416.920c.

**MEMORANDUM DECISION AND ORDER - 13**

The new regulations set forth one uniform standard for evaluating all medical source opinions. *See* 20 C.F.R. § 416.920c (The SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.").[8]

The lynchpin of this new standard is "persuasiveness." 20 C.F.R. § 416.920c(a). When determining what medical opinions to credit, an ALJ evaluates how persuasive each medical opinion is by considering: (i) supportability, (ii) consistency, (iii) relationship with the claimant, (iv) specialization, and (v) any "other factors that tend to support or contradict a medical opinion." 20 C.F.R. §§ 416.920c(c)(1)-(5). The ALJ's duty to articulate a rationale for each factor varies. 20 C.F.R. §§ 416.920c(a)-(b).

Supportability and consistency are the most important factors, and the ALJ, therefore, must explain how both factors were considered. 20 C.F.R. § 416.920c(b)(2). The factor of supportability looks inward at a medical opinions' bases; "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." 20 C.F.R. § 416.920c(c)(1). The factor of consistency, on the other hand, looks outward, comparing the opinion to the other evidence in the record; "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 416.920c(c)(2).

---

[8] Petitioner does not dispute that this new standard, not the old treating source rules, governs the evaluation of the medical evidence in this case. Pt.'s Br. at 11-12 (Dkt. 17). The undersigned agrees. *See Agans v. Saul*, No. 2:20-CV-00508 AC, 2021 WL 1388610, at *5–7 (E.D. Cal. Apr. 13, 2021) (finding that the new regulations are entitled to *Chevron* deference and that they displace the contrary, and pre-existing case law); *Carr v. Comm'r of Soc. Sec.*, No. 1:20-CV-00217-EPG, 2021 WL 1721692, at *2–5 (E.D. Cal. Apr. 30, 2021) (same).

MEMORANDUM DECISION AND ORDER - 14

The ALJ is only required to articulate findings on the remining factors (treatment relationship, specialization, and any other factors) where "two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same."  20 C.F.R. §§ 416.920c(b)(2)-(3).  Furthermore, an ALJ may address multiple opinions from a single medical source in one analysis.  20 C.F.R. § 416.920c(b)(1) (explaining that "voluminous case records" necessitate source-level articulation).

Despite agreeing that the above standards guide an ALJ's analysis of the medical opinions, the parties differ on what standard of review the Court should apply, or perhaps what standard of articulation the Court should require of an ALJ, under the new regulations. Petitioner suggests that the Court should continue requiring ALJs to provide "specific and legitimate" reasons for discounting the opinions of medical providers.  Pt.'s Br. at 12 (Dkt. 17). Respondent contends that this standard is obsolete.  Res.'s Br. at 9 (Dkt. 18).

It remains to be seen how the Ninth Circuit will resolve such disputes.  The undersigned agrees with Respondent that the genesis of the "specific and legitimate" reasons standard provides a strong basis for questioning the continued applicability of the standard to the new regulations.  *See Murray v. Heckler*, 722 F.2d 499, 501–02 (9th Cir. 1983) (agreeing that treating physicians are entitled to greater weight and reasoning that an ALJ may not disregard their opinions, therefore, without providing "specific, legitimate reasons for doing so").  It is not clear, however, that the updated standard of review Respondent proposes is meaningfully different than expanding the "specific and legitimate" reasons standard to apply equally to all medical opinions (i.e., with no heightened rationale required to justify the rejection of an evaluating doctor's opinion) as Petitioner *appears* to be requesting.  Respondent rightly acknowledges that, when complying with the new regulations, (i) an ALJ must still provide appropriate rationale for his

**MEMORANDUM DECISION AND ORDER - 15**

conclusions and (ii) whatever reasons an ALJ does provide must be and supported by substantial evidence.  Res.'s Br. at 9 (Dkt. 18).  In other words, it is undisputed that an ALJ's decision must continue to satisfy metrics of both articulation and validity to survive review.

Distilling these requirements into a precise test is not necessary to resolve this appeal. For the reasons outlined below, the ALJ's treatment of the opinions of NP Frank survives review under either Petitioner's "specific and legitimate" reasons standard or under Respondent's appropriate rationale and substantial evidence test.  Conversely, the reasons the ALJ provided for rejecting Dr. Sonnenberg's opinions, while specific, do not justify setting the opinion aside entirely.

  *b.*  *The Opinions of Dr. Sonnenberg*

On September 12, 2018, Dr. Richard Sonnenberg, a licensed psychologist, conducted a mental status examination of Petitioner at the behest of DDS.  AR 792.  Dr. Sonnenberg diagnosed Petitioner with PTSD and borderline personality disorder.  AR 796.  As to Petitioner's functioning, Dr. Sonnenberg concluded:

> The claimant has, I think, suffered with psychological difficulties for all of her life, to a large degree based on the difficulties she experienced while growing up.  The introduction of some painful and serious medical problems would seem to have made dealing with the psychological issues pretty close to impossible for her presently.  She has a goodly number of services being given to her presently, and she seems to be doing as well as she can with those services.  I would expect she would experience severe difficulties with work-related mental activities based to a large degree on the social anxiety that she experiences because of the above specified diagnoses.

*Id.*  The ALJ found this opinion unpersuasive.  AR 30.

None of the reasons the ALJ provided for this decision, however, reasonably explain rejecting the conclusion that Petitioner has social anxiety that limits her ability to pay attention, engage with others, follow instructions, and focus at work.

**MEMORANDUM DECISION AND ORDER - 16**

The first reason the ALJ provided for discounting Dr. Sonnenberg's conclusion was the nature of the evaluation and the brevity of Dr. Sonnenberg's conclusions. The ALJ stressed that Dr. Sonnenberg was "a one-time examiner who did not perform a function-by-function assessment of all the claimant's limitations." AR 30.[9] These are relevant considerations for the ALJ to consider when comparing the supportability of Dr. Sonnenberg's opinions with the opinions of the other medical professionals. 20 C.F.R. § 416.920c(c). In this case, however, the ALJ did not reject Dr. Sonnenberg's views in favor of the contradictory conclusions of a more supported medical opinion. The ALJ rejected all of the medical opinions regarding the extent of Petitioner's social limitations. AR 29-30. The nature of Dr. Sonnenberg's evaluation cannot explain this decision.

The second reason the ALJ provided for rejecting Dr. Sonnenberg's opinions was that he relied "largely" on the Petitioner's "subjective complaints." AR 30. This is a disfavored reason for rejecting the opinions of mental health evaluators. The Ninth Circuit has repeatedly held that an ALJ may not reject the report of a psychologist "simply because of the relative imprecision of the psychiatric [or psychologic] methodology" which necessarily depends "in part on the patient's self-report, as well as on the clinician's observations of the patient." *Buck v.*

---

[9] Respondent reads this sentence as a conclusion that Dr. Sonnenberg's report did not constitute a medical opinion under the new regulations. Res.'s Br. at 9-10 (Dkt. 18). The Court disagrees. The ALJ included his discussion of Dr. Sonnenberg's report in the section of his decision addressing the medical opinions. AR 29. In addition, the ALJ evaluated the persuasiveness of Dr. Sonnenberg's report in the same manner and using the same legally-mandated factors that the ALJ used for evaluating every other medical opinion. AR 30. In this regard, the ALJ acted correctly. Dr. Sonnenberg's claim that Petitioner experiences "severe difficulties with work-related mental activities," while vague, is clearly "a statement from a medical source about . . . whether [Petitioner has] one or more impairment-related limitations or restrictions" in her "ability to perform mental demands of work activities." 20 C.F.R. § 416.913(a)(2). The ALJ was, consequently, required to articulate how he considered the opinion under 20 C.F.R. § 416.920c.

**MEMORANDUM DECISION AND ORDER - 17**

*Berryhill*, 869 F.3d 1040, 1049) (9th Cir. 2017).  The reason for this rule is that clinical

interviews and mental status evaluations, while always based on self-reports, are nevertheless

"objective measures" that ALJs may not routinely disregard.  *Id.*

       This does not mean that psychological opinions are insulated from all review or that such

opinions are binding on the ALJ no matter how diagnostically unsound.  An ALJ need not accept

the opinion of any physician, including a psychiatrist or psychologist, if that opinion is "brief,

conclusory, and inadequately supported by clinical findings."  *Bayliss v. Barnhart*, 427 F.3d

1211, 1216-17 (9th Cir. 2005) (upholding the rejection of two psychological assessments where

those assessments were brief, conclusory, and unsupported by any "clinical evidence" other than

the Petitioner's unadorned subjective complaints); *see also Darden v. Saul*, 855 F. App'x 352,

355 (9th Cir. 2021) (unpublished) (an ALJ may reasonably reject the opinions of a psychologist

where "the objective findings on the mental status examination" contradict "the limitations in

[the] opinion").  Taken together, these cases prohibit ALJs from rejecting psychological opinions

for mere reliance on self-reports, but permit ALJs to reject psychological opinions, as they would

any other medical opinion, where the opinion is conclusory, unsupported, contradictory, or based

on questionable diagnostic techniques.

       In this case, it is unclear whether the ALJ rejected Dr. Sonnenberg's opinions for valid or

invalid reasons.  Respondent argues that the Court should uphold the ALJ's decision because

Petitioner's subjective complaints, which Dr. Sonnenberg accepted, do not accord with Dr.

Sonnenberg's objective findings.  Res.'s Br. at 10-11 (Dkt. 18).  But the ALJ never draws this

comparison.  Instead, the ALJ rejected Dr. Sonnenberg's opinion simply for being based on "the

claimant's subjective complaints" without further explanation.  AR 30.  Standing alone, without

**MEMORANDUM DECISION AND ORDER - 18**

any further clarification, this is not a legitimate reason to reject the opinions of a mental health provider. *Bayliss*, 427 F.3d at 1216.

The next reason the ALJ provided for rejecting Dr. Sonnenberg's opinions is similarly opaque. The ALJ stated that the opinion was not persuasive because it was "not supported by objective medical findings over a 12-month period (e.g., B13F/8, 30; B14F/7; B21F/149)." AR 30. Respondent reads this sentence as a finding that Dr. Sonnenberg's opinions conflicted with the medical record. Res.'s Br. at 11 (Dkt. 18). The Court is not so sure. At first blush, the Court read this sentence as pointing out that Dr. Sonnenberg, a one-time evaluator, did not consider all of the available medical evidence. This is consistent with Dr. Sonnenberg's admission that he only reviewed one other medical record and did not have "good records to compare" with Petitioner's disclosures. AR 792, 795. For the reasons discussed above, this is a legitimate consideration when weighing the supportability of Dr. Sonnenberg's opinions against those of other providers. It does not, however, explain rejecting these opinions entirely in the absence of any contrary evidence.

To the extent the ALJ meant to find that Dr. Sonnenberg's report is inconsistent with other medical records (a proper reason for discounting the opinion), this is not sufficiently clear from the decision as written. First, this is not a case where there is a clear inconsistency between the cited medical records and Dr. Sonnenberg's belief that Petitioner suffers from severely restricting social anxiety. Second, and more troubling, the records that the ALJ identifies in the paragraph rejecting Dr. Sonnenberg's report include records that the ALJ also cited as inconsistent with the agency doctors' opinions that Petitioner had only mild social limitations. AR 29-30. Clearly, the ALJ believed these records revealed some, serious degree of social limitation. In this situation, the Court will not and cannot speculate that unstated discrepancies

**MEMORANDUM DECISION AND ORDER - 19**

undergird an ALJ's decision. *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225 (9th Cir. 2009) (admonishing that courts must "review the ALJ's decision based on the reasoning and factual findings offered by the ALJ -- not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking"). Where inconsistencies between the medical evidence and a doctor's opinions form the basis for rejecting that physician's opinion, it is incumbent on the ALJ to identify the alleged discrepancies with sufficient specificity to permit meaningful judicial review. *See Trevizo v. Berryhill*, 871 F.3d 664, 676-677 (9th Cir. 2017) (rejecting the "ALJ's conclusory determination that [a doctor's] opinion was contradicted by his treatment notes" as insufficiently detailed, where the ALJ "pointed to nothing in [the doctor's] treatment notes or elsewhere in the clinical record that contradicted the treating physician's opinion"). Under the particular facts of this case, the ALJ's decision falls short of this standard.

The fourth and final reason the ALJ gave for rejecting Dr. Sonnenberg's opinion is inconsistency between this opinion and Petitioner's activities of daily living. AR 30. The Court agrees with Petitioner that this finding was not supported by substantial evidence. Not all activities of daily living are inconsistent with impairment. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("many home activities are not easily transferable to what may be the more grueling environment of the workplace"); *see also Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) ("impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day").

Here, Dr. Sonnenberg opined that Petitioner's mental functioning was primarily impaired by "social anxiety." AR 796. Petitioner's reported activities are not in tension with this conclusion. According to her function report and to medical records, Petitioner takes care of her

**MEMORANDUM DECISION AND ORDER - 20**

minor children, does housework, drives, does basic shopping, reads, watches television, writes

poetry, and listens to music.  AR 28; *see also* AR 286-293.  Petitioner also allows her

boyfriend's minor children to visit on the weekend.  AR 29.  But these are not activities that

require much, if any, socializing outside the home.  Moreover, for those activities that may

involve contact with strangers, like shopping, Petitioner clearly reported needing support and

assistance with these tasks.  AR 287 (stating that the Petitioner has a "hard time just going to

[the] store"); AR 288-289 (stressing that she does not go outside "often," because she fears

people); AR 289 (explaining that Petitioner does not go out alone, but "always [has her] kids or a

person with [her] because [she] get[s] anxity [sic] so bad [she] panic[s]"); AR 289 (Petitioner

always shops "with someone").  Nothing about these activities indicates that Petitioner does not

have severe social anxiety.  The ALJ erred in finding otherwise and in rejecting Dr.

Sonnenberg's opinions without providing legitimate reasons grounded in the evidence.

  *c.*  *The Opinions of Nurse Practitioner Frank*

  On January 24, 2020, Petitioner saw NP John Frank for an initial mental health

assessment.  AR 1333.  At this assessment, Petitioner had "good" grooming and hygiene, was

cooperative, had good attention and concentration, used appropriate eye contact, spoke clearly

and coherently, had had logical and goal-oriented thoughts, with no evidence of hallucinations or

delusions.  AR 1335.

  Approximately one month later, on February 21, 2020, NP Frank completed a mental

residual functional capacity assessment on Petitioner's behalf.  AR 1342-1345.  In the check-box

portion of this form, NP Frank indicated that Petitioner was markedly limited in numerous

domains, including remembering locations and work-like procedures, understanding and

remembering detailed instructions, maintaining concentration and attention, performing activities

**MEMORANDUM DECISION AND ORDER - 21**

within a schedule, maintaining regular attendance, sustaining an ordinary routine without supervision, making simple work-related decisions, being aware of normal hazards and taking normal precautions, traveling to unfamiliar places, and setting realistic goals and making independent plans.  AR 1342-1343.  In the narrative portion of the form, NP Frank explained that Petitioner "often" has hallucinations that make it "difficult" for her "to discern between reality and delusion."  AR 1343.  He also opined that her psychosis would make it "difficult (if not impossible)" for her to keep employment.  AR 1344.

The ALJ gave two valid reasons for discrediting this extremely restrictive opinion.  First, the ALJ correctly noted that NP Frank saw Petitioner once during a period when she was not taking medications.  AR 30.  In other words, his assessment of Petitioner's functioning was based on her presentation when she was not under appropriate medical care.  This was a valid reason not to credit his opinion.  *See Warre v. Commissioner of Social Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (a condition that can be effectively controlled with medication is not disabling for the purposes of determining eligibility for Social Security Insurance benefits).

Petitioner attempts to avoid this conclusion by arguing that this is not a case where medical care was helpful.  Pt.'s Br. at 15 (Dkt. 17).  The facts do not support this conclusion. There is substantial evidence in the record to support the ALJ's findings that Plaintiff's symptoms were significantly improved by the medication.  AR 28; *see also* AR 922 (Petitioner "balancing out" after resuming her medication); AR 1333 (Petitioner doing "okay" until she stopped services and treatment); AR 728 (Petitioner doing "great" on medication and reporting that her medication was working well until recent life changes and stressors).

Petitioner also cites to *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) for the proposition that it was inappropriate for the ALJ to "punish" her for her lapse in taking

**MEMORANDUM DECISION AND ORDER - 22**

medication.  Pt.'s Rply at 6 (Dkt. 22).  The facts of *Garrison*, however, are distinguishable from

the facts of this case.  In *Garrison*, the claimant's decision to go off her medication was

attributable, at least in part, to her underlying bipolar disorder and other psychiatric issues.  *Id.* at

1023 n. 24.  In these circumstances, the Ninth Circuit found that it was wrong for the ALJ to

discredit the claimant for exercising poor judgment about medication management.  *Id.*  The

Ninth Circuit indicated, however, that this rule only applies "when the record affords compelling

reason to view [a claimant's] departures from prescribed treatment as part of [the claimant's]

underlying mental afflictions."  *Id.*  Here, Petitioner has not presented any evidence that her lapse

in treatment was related to her mental health conditions.  To the contrary, Petitioner alleges that

she was unable to obtain treatment during 2019 because she moved to Oregon with an abusive

boyfriend who kept her medications away from her.  Pt.'s Br. at 17 (Dkt. 17).[10]  Prior to the

disability hearing, however, Petitioner had escaped this relationship and resumed treatment.  AR

93, 1333.

While this is an understandable reason to temporarily stop taking medication, it is not a

basis for obtaining disability benefits.  The Social Security Act defines "disability" as the

"inability to engage in any substantial gainful activity *by reason of any medically determinable*

*physical or mental impairment* which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §

---

[10] Petitioner also claims she lost insurance during the move.  Pt's Br. at 17 (Dkt. 17).  The
portion of the transcript Petitioner cites, however, does not support this conclusion.  AR 93-95.
The only testimony Petitioner provided about her insurance was that she still had Oregon
insurance at the time of the disability hearing and was in the process of switching her insurance
back to Idaho.  AR 96, 98.  This testimony suggests that any gaps in Petitioner's insurance
coverage caused by moving to Oregon were temporary.  In other words, this is not a case where
Petitioner could not afford the medication she needed to function.  AR 25 (Petitioner resumed
medication in August 2019 and has been taking medication consistently since December 2019).

**MEMORANDUM DECISION AND ORDER - 23**

423(d)(1)(A) (emphasis added); *see also* 42 U.S.C. § 1382c(a)(3)(A).  Here, Petitioner alleges

her inability to access medication was due to moving and domestic abuse, not impaired judgment

caused by her underlying medical conditions.  In these circumstances, it was not unreasonable

for the ALJ to evaluate Petitioner's functioning based on periods of time when external

impediments no longer prevented Petitioner from accessing appropriate medication.

     The ALJ also gave a second, legitimate reason for rejecting NP Frank's opinion:

inconsistency with her daily activities.  As outlined above, NP Frank found that Petitioner had

marked limitations across numerous mental domains, including making simple work decisions,

sustaining a routine, maintaining attention and concentration, and making independent plans.

AR 1342-1343.  The ALJ reasonably concluded that these limitations did not align with

Petitioner's demonstrated ability to care for herself, her home, and her minor children.  AR 30;

*see Suwanchatree v. Berryhill*, No. C17-1762-MAT, 2018 WL 4103663, at *4 (W.D. Wash.

Aug. 29, 2018) (the ALJ reasonably found that the claimant's ability to care for her children was

inconsistent with the conclusion that the claimant was markedly impaired in relation to making

simple work-related decisions and adapting and managing oneself).  It is well-settled that this

type of conflict is a specific and legitimate reason for refusing to a treating provider's opinions.

*Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020).

III.    <u>Petitioner's Symptom Testimony and the Statement of Petitioner's Mother</u>

     Because the ALJ has the discretion to enter new findings regarding Petitioner's

credibility and the lay witness evidence on remand, the Court does not address Petitioner's

challenge to these portions of the ALJ's decision.

**MEMORANDUM DECISION AND ORDER - 24**

IV.   <u>The Remedy</u>

When an ALJ's denial of benefits is not supported by the record, district courts possess discretion under 42 U.S.C. § 405(g) to remand for further proceedings or for an award of benefits. *Treichler v. Comm'r of SSA*, 775 F.3d 1090, 1099 (9th Cir. 2014).  The proper course turns on the utility of further proceedings.  A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings and when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision.  *Id.* at 1100.  In most cases, however, remand for additional investigation or explanation is preferred.  *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012).  Such remands allow for the ALJ to resolve any outstanding issues in the first instance.

In this case, it remains uncertain whether the ALJ would be required to award Petitioner benefits if the errors in the ALJ's treatment of Dr. Sonnenberg's opinions are corrected.  First, the ALJ's rejection of Dr. Sonnenberg's testimony, while inadequately explained, is not clearly wrong or unreasonable.  Second, even if the ALJ elects to credit Dr. Sonnenberg's report on remand, genuine questions remain about how to best translate this broad and ambiguous report into the RFC and whether Petitioner's alleged social limitations prevent her from working.  The Court will, therefore, reverse and remand for further proceedings under the ordinary remand rule.  On remand, the ALJ is directed to reevaluate the medical record consistent with this disposition.

## **ORDER**

Based on the foregoing, Petitioner's Petition for Review and the Brief in Support of

Petition to Review (Dkts. 1 & 17) are **GRANTED,** and the decision of the Commissioner is

**REVERSED** and **REMANDED** for further proceedings consistent with this decision.

DATED: March 30, 2022

Raymond E. Patricco
U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 26**